IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

DAVID POTTER,                          )
                                       )
        Plaintiff,                     )
                                       )
v.                                     )       CASE NO.: 1:16-cv-749-GMB
                                       )       [WO]
CITY OF DOTHAN, ALABAMA, *et al*.,     )
                                       )
        Defendants.                    )

## MEMORANDUM OPINION AND ORDER

Plaintiff David Potter filed this lawsuit on September 9, 2016, asserting claims

arising out of the force used by City of Dothan police officers during his arrest. Now

pending before the court are the Motion for Summary Judgment filed by Defendants City

of Dothan and Steve Parrish (Doc. 57) and the Motion for Summary Judgment filed by

Defendants Timothy Traynham and Ray Mock. Doc. 59. After careful consideration of the

parties' submissions, the applicable law, and the record as a whole, and for reasons to be

discussed, the Motion for Summary Judgment filed by the City Dothan and Parrish is due

to be GRANTED in part and DENIED in part, and the Motion for Summary Judgment filed

by Traynham and Mock is due to be DENIED.

## I. JURISDICTION AND VENUE

The court has subject-matter jurisdiction over the claims in this lawsuit pursuant to

28 U.S.C. §§ 1331 and 1367. The defendants do not contest personal jurisdiction or venue,

and the court finds adequate allegations to support both.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On September 10, 2014, several City of Dothan police officers responded to a domestic violence call involving Potter. Two of the officers responding were Traynham and Mock. Doc. 60-2 at 3. Parrish is the current Chief of Police for the City of Dothan, but was not the Chief of Police on the day in question. Doc. 58-2.

William Glover states in an affidavit that he is an officer who responded to the domestic violence call and met Sergeant Wieczorek, who advised him that Potter had assaulted a victim and left the scene. Doc. 60-2 at 3. It was reported that gun shots had been heard and another officer recovered a spent shell casing at the scene. Doc. 60-2 at 3. The officers received advisories about Potter's past law enforcement interactions. Doc. 60-2 at 3.

Officers then set up a perimeter at the residence of Helen Potter, Potter's mother, and they found Potter's vehicle at her home. Doc. 60-2 at 3. Two of the officers, Traynham and Mock, knocked at the door of the residence. Doc. 60-2 at 4. Helen Potter answered the door and allowed the officers to enter. Doc. 60-2 at 4. After entering the home, the officers found Potter in a bedroom. Doc. 60-2 at 5.

Potter testified in his deposition that he laid on the floor on his stomach when the officers came in the room calling his name. Doc. 68-4 at 64:19–65:2. Potter maintains that he did not fall down, but laid down. Doc. 68-4 at 70:5–8. Potter further testified that Traynham kneed him in the face while he was on his stomach. Doc. 68-4 at 65:4–9. According to Potter, when he was kneed in the face while lying on his stomach he was not yet in handcuffs, but police officers were holding his hands behind his back while in the

process of placing handcuffs on him. Doc. 68-4 at 70:1–17.[1]  He testified that he was hit

one "good hard time." Doc. 68-4 at 69:12–14.[2]

Glover states in his affidavit that he assisted Mock in handcuffing Potter. Doc. 60-2 at 5.  The verified claim that Potter filed with the City of Dothan states that when his mother answered the door Potter was lying face down on the floor, two or three officers grabbed his arm, and Traynham punched him on the left side of his face and kneed him in his right eye. Doc. 60-1 at 23.

Potter was transported to the hospital by Officer Clayton Reynolds and treated for injuries he received during his arrest. Doc. 60-6 at 4.  The medical records document an "orbital floor fracture." Doc. 68-5 at 21.  The deposition testimony of Dr. Bolton has been provided to the court to explain this fracture. Doc. 60-7 at 4:14–15.  Bolton testified that the weakest part of the orbit around the eye is the inner wall, where the bone is thinnest. Doc. 60-7 at 3:5–11.  He further explained that Potter's bone fractured through the floor into the sinus as force was applied to the orbit. Doc. 60-7 at 3:12–14.  When asked, Bolton agreed that the injury suffered by Potter generally occurs when a direct blow is received from the front to the eye, the orbital wall pressure is high, and the weakest wall, the orbit

---

[1]  Potter has stated in brief at various points that officers were on top of his body, but the cited page of his deposition does not support this allegation. *See* Doc. 68 at 9 (citing Doc. 68-4 at 66:4–9).

[2]  The court notes that the officers' version of the events is that Potter was standing in a closet doorway in the back of the house, unresponsive to commands to show his hands, and when he attempted to run Mock swept his legs and Potter fell to the ground. Doc. 60-2.  The officers state that he continued to resist arrest while they placed handcuffs on him. Doc. 60-2.  Mock states in an affidavit that at no time did he witness any officer strike Potter. Doc. 60-3 at 7.  Traynham states in an affidavit that at no time did he strike, kick, or knee Potter. Doc. 60-4 at 5.  This account is inconsistent with the account given by Potter but, under the Fed. R. Civ. Pro. 56 standard, the court must credit Potter's version of events in ruling on the motion for summary judgment.

floor, breaks. Doc. 60-7 at 5:11–19.  He also explained that this type of injury heals on its own. Doc. 60-7 at 4:1–2.

After his discharge from the hospital, the officers took Potter to the Dothan City Jail. Doc. 60-4 at 6.  Potter was charged with domestic violence and resisting arrest. Doc. 60-4 at 6.  The domestic violence charge has been dismissed, and Potter was found guilty of resisting arrest at trial. Doc. 60-2 at 8.

Potter brings claims in his amended complaint pursuant to 42 U.S.C. § 1983 for excessive force against Traynham and failure to intervene against Mock.  Potter asserts additional counts against Parrish and the City of Dothan that are different theories of municipal liability—policymaker ratification; inadequate training, custom and practice; and supervisor liability.  Additionally, Potter brings state-law claims that he labels as assault and battery/intentional infliction of emotional distress and for *respondeat superior* under state law. Doc. 23 at 6–12.

## II.  DISCUSSION

A.    **Federal Claims**

1.    *Individual Defendants*

The individual defendants move for summary judgment on the federal claims against them on the basis of qualified immunity.  Qualified immunity is a protection designed to allow government officials to avoid the expense and disruption of trial. *Ansley v. Heinrich*, 925 F.2d 1339, 1345 (11th Cir. 1991).  As a preliminary matter, the court must determine whether the public official was acting within the scope of his discretionary authority at the time the allegedly wrongful acts occurred. *See Rich v. Dollar*, 841 F.2d

1558, 1563 (11th Cir. 1988). Potter does not dispute that the individual defendants were acting within their discretionary authority in this case.

Once it is established that a defendant was acting within his discretionary authority, the court must determine whether "[t]aken in a light most favorable to the party asserting the injury . . . the facts alleged show the officer's conduct violated a constitutional right." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). "[I]f a constitutional right would have been violated under the plaintiff's version of the facts," the court must then determine "whether the right was clearly established." *Wood v. Kesler*, 323 F.3d 872, 878 (11th Cir. 2003). Requiring that a constitutional right be clearly established means that liability attaches only if "[t]he contours of the right [violated are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *United States v. Lanier*, 520 U.S. 259, 270 (1997). In other words, a defendant is entitled to "fair warning" that his conduct deprived his victim of a constitutional right. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

### a.    Excessive Force Claim

Use of excessive force is an area of the law "in which the result depends very much on the facts of each case," and therefore police officers are entitled to qualified immunity unless existing precedent "squarely governs" the specific facts at issue. *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018).

The Fourth Amendment's freedom from unreasonable seizures encompasses the right to be free from excessive force during the course of criminal apprehension. *Graham v. Connor*, 490 U.S. 386 (1989); *Oliver v. Fiorino*, 586 F.3d 898, 905 (11th Cir. 2009).

Excessive force is measured by an objective reasonableness standard which balances the nature and quality of the intrusion on Fourth Amendment interests against the government interest at stake. *Oliver*, 586 F.2d at 905. Courts consider the *Graham* factors, which take into account the severity of the crime, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect actively resists arrest or attempts to evade arrest by flight. *Id.* Other factors to consider may include the need for application of force, the relationship between the need and the amount of force used, and the extent of the injury inflicted. *Lee v. Ferraro*, 284 F.3d 1188, 1198 n.7 (11th Cir. 2002).

The defendants argue that Traynham is entitled to qualified immunity because there is no constitutional violation in the form of excessive force in this case. The defendants state that the first *Graham* factor weighs heavily in Traynham's favor because Potter had been reported for fleeing the scene after an allegation of domestic violence and firing a weapon. The defendants argue that the second favor weighs in Traynham's favor because Potter was reported as being in possession of and discharging a firearm. The defendants also contend that this court may disregard Potter's deposition testimony that he was not resisting arrest because he was convicted of that charge.

The court begins with the last point—the evidence to be considered in the *Graham* analysis. The defendants take the position that the court may ignore Potter's deposition testimony that he did not resist arrest because he has been convicted of resisting arrest. In support, the defendants present a record from the Dothan Municipal Court which does reflect that Potter was convicted of resisting arrest. Doc. 60-2 at 8. The court has not, however, been provided with a transcript of that proceeding or any other evidence

regarding the substance of the charge upon which Potter was convicted.

The Eleventh Circuit addressed the effect of a state-court conviction for resisting arrest on a federal excessive force claim in *Hadley v. Gutierrez*, 526 F.3d 1324, 1331 (11th Cir. 2008). In *Hadley*, the plaintiff pleaded guilty to resisting arrest with violence in state court and also brought a federal claim asserting excessive use of force. *Id.* Applying *Heck v. Humphrey*, 512 U.S. 477 (1994),[3] the court explained that "[b]ecause of his guilty plea, we assume he resisted at some point during the night. What we do not definitively know, however, is whether the punch complained about occurred at a time when Hadley was resisting." *Id.* at 1331. The court explained that there could be a constitutional violation that would not be barred by *Heck* if the officer used force at a time when the plaintiff was not resisting arrest. *Id.* The court applied a similar analysis to the defendant's invocation of collateral estoppel in that case, stating that the guilty plea did not necessarily resolve the issue of whether the officer used force while the plaintiff was resisting arrest. *Id.* at 1332; *see also M.D. ex rel. Daniels v. Smith*, 504 F. Supp. 2d 1238, 1252 (M.D. Ala. 2007) (applying Alabama law and finding that collateral estoppel did not bar the excessive force claim because there is no evidence that the claim was actually litigated during the state proceedings), *aff'd*, 278 F. App'x 987 (11th Cir. 2008).

Consistent with *Hadley*, the court finds that it may consider Potter's testimony with respect to his claim of excessive force. There is no developed record before the court as to

---

[3] Under *Heck*, "the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Heck*, 512 U.S. at 487. No such argument has been made in this case. If it had been raised, however, the argument would be unavailing for the same reasons as those set out herein.

the factual basis of the charge upon which Potter was convicted.  Potter could have been convicted of resisting arrest based on his actions before or after the application of force. *Hadley*, 526 F.3d at 1331; *M.D. ex rel. Daniels*, 504 F. Supp. 2d at 1252.  For this reason, the court is not compelled to ignore his testimony.

The defendants also urge the court not to accept Potter's version of the events that he was lying on the floor because he stated in his deposition that he was hiding in the back room.  The defendants cite to a portion of Potter's deposition testimony in which he says that he did not lie down immediately when the officers came to the house, but went to the back of the house. Doc. 60-1 at 48–51.  They point out that in his verified complaint filed with the City of Dothan Potter said he laid on the floor immediately. Doc. 60-1 at 23. The defendants cite authority for the proposition that a plaintiff cannot create a question of fact with an affidavit that merely contradicts, without explanation, previously given testimony. *See Jenkins & Assoc., Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 984).

However, Potter's testimony about his location when the officers arrived is not necessarily inconsistent with, and does not undermine, his deposition testimony that at the time he was kneed in the eye, he was on the ground on his stomach, his arms were restrained, and was not resisting arrest. Doc. 68-4 at 65:4–9.  When asked about the difference in the verified complaint, Potter said he was confused and mad when he gave it. Doc. 60-1 at 50:3–7.  Potter clarified in his deposition, however, that the verified complaint was partially true because "[o]nce they identified me and identified them I laid down on the floor" in the back of the house where he had been hiding. Doc. 60-1 at 50:14–51:13. The court does not find that the law requires Potter's deposition testimony to be disregarded

and will accept for purposes of the motions for summary judgment that Potter was lying on the floor and was not resisting arrest at the time that he was kneed in the eye. Doc. 68-4 at 65:4–9.

Accepting Potter's evidence that he was not resisting arrest when force was applied, the court turns to remaining *Graham* factors. The defendants cite, among other cases, *Wordley v Sam Miguel*, 567 F. App'x 719, 721–22 (11th Cir. 2014), and *Mobley v. Palm Beach Co. Sheriff Dept.*, 783 F.3d 1347, 1353 (11th Cir. 2015), for the proposition that force sufficient to inflict injuries while handcuffing a plaintiff is not unreasonable, and so the force applied in this case also is not unreasonable. In both *Wordley* and *Mobley*, the court distinguished *Smith v. Mattox*, 127 F.3d 1416 (11th Cir. 1997), a case cited by Potter, in which a constitutional violation was found.

The facts of this case, however, when viewed in the light most favorable to the nonmovant, fall squarely within *Smith*'s holding. In *Smith*, the plaintiff was at the scene of a drug sting where he raised a baseball bat in a "threatening posture" and refused a command to drop the bat. *Smith*, 127 F.3d at 1418. The plaintiff then fled from the scene. When confronted by police in a driveway near the site of the sting, the plaintiff "docilely submitted" to a request by the police to get down and lay on the ground. *Id.* At that point, the officer put his knee on the plaintiff's back, pulled his arm back to handcuff him—causing discomfort and eliciting a complaint from the plaintiff—and then, with a "grunt and a blow," broke the plaintiff's arm. *Id.*

The *Smith* court explained that the *Graham* factors did not clearly point to a constitutional violation for the use of "some force" because the police officer reasonably

could have believed that the plaintiff posed danger to others' safety after the gesture with the bat, and explained that even if the plaintiff was not "actively resisting arrest at the very moment the force was applied, he was before that moment," so it was not unreasonable to use some force in putting the plaintiff in a cuffing posture. *Id.* at 1419. The court held, however, that assuming that the plaintiff was offering no resistance at all at the time force was applied the considerable effort and force that broke his arm was unnecessary to "restrain even a previously fractious arrestee." *Id.* at 1420.

Similarly, in this case, Potter may have posed a threat and resisted arrest at some point. But taking the facts in the light most favorable to Potter, he was not resisting arrest when force was applied, and the force was sufficient to cause an orbital bone break. As in *Smith*, the *Graham* factors point to a constitutional use of some force because Potter posed a danger to others due to the possible presence of a gun such that Traynham "could reasonably have believed that without some force restraining [Potter], he would have resumed either his attacks or his flight." *Id.* If this court accepts Potter's testimony, however, he was not resisting arrest at all at the time force was applied, and the facts of this case fall parallel *Smith*, which resulted in this conclusion: "assuming as we must that Smith was offering no resistance *at all*, the considerable effort and force inferable from the grunt, Smith's sensation of a blow, and the broken arm was obviously unnecessary to restrain even a previously fractious arrestee." *Id.* (emphasis in original).

In addition, the evidence that Potter was not resisting at all at the time force was applied makes the facts of this case distinguishable from other Eleventh Circuit precedent cited by the defendants involving injuries caused while a person resists arrest. *See, e.g.*,

*Mobley*, 783 F.3d at 1356 (stating that plaintiff conceded that he had refused to surrender his hands, distinguishing the case from *Smith*).

The defendants have also called into question the amount of force used by Traynham, arguing that the force used in this case was *de minimus* because the injury healed on its own and similar orbital bone injuries are caused by falls. Dr. Bolton testified that an orbital floor fracture occurs to protect the eye "from sudden intense intraorbital pressure." Doc. 60-7 at 26:23–27:4. Potter testified to the sensation of a "hard" blow to his face. Doc. 68-4 at 69:12–14. Bolton's and Potter's testimony is consistent with an application of "considerable effort and force" in breaking the orbital bone. *See Smith*, 127 F.3d at 1420 (finding evidence of considerable force in the "grunt" by the officer at the time the force was applied, sensation of a blow, and the broken bone). This court cannot conclude as a matter of law, therefore, that there was only *de minimus* force used.

The force used in kneeing Potter in the eye, which was separate from the force used to restrain his arms to put on handcuffs, also could be considered a "gratuitous, separate blow." *See Wordley*, 567 F. App'x at 723 (explaining that the twisting of the plaintiff's hand while applying handcuffs "during arrest lacks the gratuitous, separate blow that pushed—just barely—the officer's actions in *Smith* over the line between permissible and prohibited force").

For all of these reasons, the court concludes for purposes of summary judgment that the blow to Potter's face while he was on his stomach, officers were restraining his arms, and he was not resisting arrest, which had enough force to break the orbital bone, was a constitutional violation in that it was "unnecessary to restrain even a previously fractious

arrestee." *Smith*, 127 F.3d at 1420.

Abrogation of qualified immunity also requires that the constitutional violation be one of clearly established law. *Wood*, 323 F.3d at 878. The defendants argue that even if there is a constitutional violation, it was not a violation of clearly established law because Potter has cited to no case prohibiting a police officer from using force on a defendant who was attempting to resist arrest. Having concluded, however, that the facts at this stage of the proceedings support a finding that Potter was not resisting arrest at the time force was used, that argument is unavailing.

As noted earlier, use of excessive force is an area of the law "in which the result depends very much on the facts of each case," and thus police officers are entitled to qualified immunity unless existing precedent "squarely governs" the specific facts at issue. *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018). In *Smith*, the defendant argued that there was no controlling opinion informing him that nondeadly force was excessive if it followed the sort of flight and menacing behavior presented in that case. *Smith*, 127 F.3d at 1418. The court agreed that there was no case which presented the same facts, but held that the defendant's conduct was "so far beyond the hazy border between excessive and acceptable force" that the defendant had to know he was violating the Constitution even without a case on point. *Id.* at 1419.

The facts in this case, viewed in a light most favorable to the nonmovant, are that Potter had fled the scene of a crime and was a potential threat before his arrest but he was not resisting arrest at the time force was applied, and that the force applied was separate from the force needed to apply handcuffs but was sufficient to break bones around his eye.

The *Smith* decision, finding a constitutional violation where a plaintiff previously posed a threat, but the gratuitous force used when the plaintiff was not resisting arrest was sufficient to break a bone, is precedent which squarely governs the specific facts of this case. *See Kisela*, 138 S. Ct. at 1153. The motion for summary judgment is due to be DENIED as to the excessive force claim against Traynham.

### b. Failure to Intervene

The defendants do not advance any argument unique to the failure to intervene claim against Mock, resting exclusively on their argument that there was no underlying constitutional violation by Traynham.

"That a police officer had a duty to intervene when he witnessed the use of excessive force and had the ability to intervene was clearly established." *Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919, 927 (11th Cir. 2000). In the instant case, for the reasons discussed above, this court has reached the conclusion under existing Eleventh Circuit precedent that Traynham's actions violated clearly established law. With no apparent basis for separating the failure-to-intervene claim against Mock from the claim against Traynham, and given the undisputed evidence that Mock was present at the scene (Doc. 60-3 at 7), the court similarly concludes that under the circumstances of this case viewed in a light most favorable to the nonmovant the failure to stop the use of unreasonable force also violated clearly established law, and summary judgment is due to be DENIED as to the claim against Mock.

### c. Supervisor liability

Potter also attempts to hold Parrish liable for excessive force based on a supervisory

liability theory. But "it is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (internal quotation marks omitted). Instead, to hold a supervisor liable a plaintiff must show that the supervisor either directly participated in the unconstitutional conduct or that a causal connection exists between the supervisor's actions and the alleged constitutional violation. *Id*.

It is apparently undisputed that Parrish, who is currently the Police Chief of the City of Dothan Police Department, became the Chief of Police on May 1, 2015, after the events at issue in this case. Doc. 58-2. In his brief in response to the motion for summary judgment, Potter claims that the City of Dothan and Parrish failed to ensure that Traynham and Mock were adequately trained and supervised. Potter does not, however, dispute that Parrish was not the Chief of Police during the events at issue and offers no evidence to demonstrate that Parrish served in any supervisory capacity at the time of the constitutional violation. Summary judgment is, therefore, due to be GRANTED as to any claims against Parrish individually.

In addition, a suit against an officer in his official capacity is redundant of a claim against the municipality. *See Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) (holding that suits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent so there no longer exists a need to bring official-capacity actions against local government officials). Summary judgment is due to be GRANTED as to Parrish in his individual and official capacities and the court will

consider the supervision theories in the context of Potter's theories for holding the City of Dothan liable for the individual officers' actions.

## 2.    *City of Dothan*

The defendants argue that there is no underlying constitutional violation so the City of Dothan is entitled to summary judgment as to the excessive force claims. Having concluded, however, that questions of fact exist which preclude summary judgment in favor of the defendants on the underlying excessive force claims, the court now turns to the issue of the City of Dothan's liability for the underlying constitutional violations.

In briefing, Potter has stated that the counts related to the City of Dothan are a federal claim for deliberate indifference to the use of excessive force, a claim for failure to train, a claim of approval of excessive force, and a claim for failure to discipline. Doc. 69 at 6. While alleged as distinct causes of action, these are all theories of municipal liability.

Cities cannot be held liable for a violation of federal constitutional rights based on a theory of *respondeat superior* liability. *See Doe v. Sch. Bd. of Broward Cnty.*, 604 F.3d 1248, 1263 (11th Cir. 2010). Rather, to establish § 1983 liability for a violation of constitutional rights, a plaintiff must identify a governmental policy or custom that is the "moving force" behind the violation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–94 (1978). A plaintiff can demonstrate a policy or custom in two ways: by identifying either "(1) an officially promulgated county policy or (2) an unofficial custom or practice of the county shown through the repeated acts of a final policymaker for the county." *Grech v. Clayton Cnty., Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003).

Under either avenue, a plaintiff (1) must show that the local governmental

entity . . . has authority and responsibility over the governmental function in issue and (2) must identify those officials who speak with final policymaking authority for that local governmental entity concerning the act alleged to have caused the particular constitutional violation in issue.

*Id.*  Importantly, a municipal entity "does not incur § 1983 liability for injuries caused solely by its employees." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004).

 A plaintiff must show that the "failure to train reflects a 'deliberate' or 'conscious' choice by a municipality." *City of Canton v. Harris*, 489 U.S. 378, 390 (1989).  Without notice of a need to train or supervise in a particular area, a municipality is not liable as a matter of law for any failure to train and supervise. *Gold v. City of Miami*, 151 F.3d 1346, 1351 (11th Cir. 1998).  To determine whether a failure to train amounts to a deliberate or conscious choice by a municipality, courts are instructed to look at the "degree of fault" of a municipality's failure to train and determine whether it "amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton*, 489 U.S. at 388.  With respect to police officer training, the deliberate indifference standard is a high threshold. *Id.* at 391; *see also Connick v. Thompson*, 563 U.S. 51, 70 (2011).  Ordinarily, a plaintiff must allege a pattern of widespread constitutional violations that would put the municipality on notice of its inadequate training. *See Connick*, 563 U.S. at 62.

If a plaintiff depends on a pattern of complaints of unconstitutional conduct, the complaints must be meritorious. *See Brooks v. Scheib*, 813 F.2d 1191, 1193 (11th Cir. 1987) (noting that even though there had been ten citizen complaints, the city did not have any notice of past police misconduct because the plaintiff "never demonstrated that past

complaints of police misconduct had any merit"). To establish a policy or custom, the complaints also must have been of similar conduct. *See Mercado v. City of Orlando*, 407 F.3d 1152, 1162 (11th Cir. 2005) (holding that plaintiff failed to show that a list of cases involving excessive force involved "factual situations that are substantially similar to the case at hand"). A plaintiff must present evidence not only that the municipality was on notice of a need to train but also that the municipality made a choice not to do so. *Am. Fed. of Labor & Cong. of Indus. Orgs. v. City of Miami*, 637 F.3d 1178, 1189 (11th Cir. 2011).

Potter cites to former Police Chief Benton's deposition for the proposition that the Police Chief is the policymaker for Dothan as it relates to the police department. In his deposition, Benton states that policy is set by the command staff. Doc. 69-4. The defendants rely on current Police Chief Parrish's affidavit in which he maintains that disciplinary action by the Chief of Police is appealable to the personnel board and the Circuit Court of Houston County, and all other orders, rules, and decisions made by the Police Chief are reviewable by the Dothan City Commission. Doc. 58-2 at 3.

Regardless of his position on who the policymaker is, Potter does not rely on a formally adopted policy, but instead hangs his hat on the theory that there was a failure to train or supervise in the face of deliberate indifference to a widespread pattern of constitutional violations, and therefore the court analyzes that theory. *See Stovall v. Allums*, 2005 WL 2002069, at *7 n.36 (M.D. Ala. Aug. 16, 2005) (addressing evidence of deliberate indifference where plaintiff argued that policy or custom was established by former Dothan Police Chief White), *aff'd*, 161 F. App'x 828 (11th Cir. 2005).

In this case, Potter supports his contention that the City of Dothan has a policy or

custom of using excessive force by relying on the following: the opinion in *McCray v. City of Dothan*, 169 F. Supp. 2d 1260, 1284 (M.D. Ala. 2001); the argument that there have been news articles about issues with the police department; an increase in use of force reports; an ongoing investigation of the department; the fact that the National Association for the Advancement of Colored People ("NAACP") is compiling information about the department; testimony of Potter's mother, Helen Potter, that she is aware of incidents of force; lawsuits filed against the City for the use of excessive force; and excessive force complaints against Mock.[4]

In response, the defendants argue that there is no evidence in the record that Traynham or any other officer was inadequately trained, there is no evidence of a pattern of similar constitutional violations by the Dothan Police Department officers in their use of force, and there is no evidence to show that any failures to train or supervise Traynham or Mock were the moving force behind any constitutional injury to Potter.

Potter's evidence is largely inapposite and insufficient. The court will address the cases first. The *McCray* opinion was a ruling on a motion for summary judgment, and the custom or policy analysis within that opinion rested in part on undisputed evidence that complaints of excessive force were not fully investigated by the City, that the City did not have a policy on use of force, and the officers were not trained on constitutional rights after they left the police academy. *See McCray v. City of Dothan*, 169 F. Supp. 2d 1260, 1284–

---

[4] In support of his excessive force theories, Potter has relied on expert testimony from Charles Drago that is the subject of a motion by the defendants to be addressed in a separate Memorandum Opinion and Order. Potter has not relied on that expert's report or deposition to establish municipal liability. *See* Doc. 69-9.

85 (M.D. Ala. 2001), *aff'd in part, rev'd in part*, 67 F. App'x 582 (11th Cir. 2003).

In this case, the court has been presented with a policy of the City of Dothan Police Department, General Order 200-10H, regarding use of force, which defines the reasonable use of force and orders that only reasonable force should be used. Doc. 68-10 at 2. Moreover, the court has been provided with affirmative evidence that the Dothan Police Department provides training that meets and exceeds the minimum standards required under the Alabama Peace Officer's Standards and Training Commission, and that officers receive police academy training but also biannual in-service training on the Fourth Amendment, making arrests, and use of force. Doc. 58-3 at 3. Therefore, the court does not find the 2001 *McCray* opinion pertinent to the question of policy or custom of the City of Dothan at the time of this incident.

Potter also offers a list of lawsuits, including this lawsuit, involving Dothan police officers, two of which involve complaints against Mock. Doc. 69 & 69-7. The defendants point out, and the court takes judicial notice, that the two suits against Mock have been dismissed, three of the other suits on the list remain pending, and four have been dismissed. *See Johnson v. Mock*, 13cv672-MHT; *Williams v. Mock*, 14cv287-WHA (Doc. 83) (entering judgment on the federal claims and declining to exercise jurisdiction over state-law claims); *Jerrell v. Davis*, 16cv16-MHT; *Bryant v. City of Dothan*, 16cv913-MHT; *Kleinschnitz v. Phares*, 13cv209-MHT; *Williams v. City of Dothan*, 13cv529-WKW; *Bradly v. City of Dothan*, 16cv1012-WKW; *Thomas v Moody*, 13cv920-WHA (Doc. 116) (affirming dismissal of federal claim). The *Anderson* and *Calhoun* cases, as to which summary judgment was denied, were dismissed after settlement. *Anderson v. Officer*

*Jackson & City of Dothan*, 1:08cv175-MHT; *Calhoun v. William Banks, et al.*, 1:07cv455-MEF. The *Borton v. City of Dothan* case, 1:08cv654, resulted in a jury verdict in favor of the defendants. The court cannot conclude that these cases, which have not resulted in final judgments against the City of Dothan or its officers, are evidence of a widespread pattern of constitutional violations. *Brooks*, 813 F.2d at 1193.

In addition to cases, Potter relies on evidence of complaints concerning police conduct. Under Eleventh Circuit law, to establish a custom or policy, past complaints of police misconduct have to be shown to have merit and "the number of complaints bears no relation to their validity." *Id*. Where a plaintiff attempts to show deliberate indifference through a pattern of past violations and a failure to take appropriate action, "[a] list of complaints against police officers, without more, is insufficient to create an issue of fact regarding [a municipality's] policy of inadequately investigating or disciplining its police officers. Rather, the Plaintiff must present at least some evidence from which a reasonable jury could infer that the complaints were meritorious." *Shehada v. Tavss*, 965 F. Supp. 2d 1358, 1373–74 (S.D. Fla. 2013).

Potter also points to Parrish's deposition testimony about an investigation into allegations that the Dothan Police Department has a practice of planting narcotics on young black men. Doc. 69-5 at 18. Parrish testified that he requested that the Federal Bureau of Investigation begin the investigation based on a report from an internet blogger, and that the investigation is still ongoing. Doc. 69-5 at 19–20. Because the investigation is ongoing, there is no finding as to the merits of this claim. And, at any rate, the alleged basis of the investigation is not related to the use of excessive force. This investigation cannot establish

a policy and custom because it is not of meritorious complaints, *Brooks*, 813 F.2d at 1193, and does not involve "factual situations that are substantially similar to the case at hand." *Mercado*, 407 F.3d at 1162.

Potter's NAACP summary of complaints also is not relevant in as much as it includes employment disputes, complaints against the County Jail or the district attorney, complaints regarding sentencing, and other non-excessive force complaints. Doc. 69-6. Many of the cataloged complaints also contain no information as to disposition. *See*, *e.g.*, Doc. 69-6 at 40. Potter has not pointed to any specific complaints within the 61-page summary that are factually similar this case or demonstrated that any complaints regarding similar facts were meritorious.

Similarly, the statement in Potter's brief that a "simple google search will render many articles and news reports of issues within the police department," Doc. 69 at 14, does not establish that there are meritorious relevant complaints.

In addition, while Potter points to deposition questions about a report regarding use of force statistics from 2012 to 2014, the testimony does not specify whether the report was derived from reporting by the police or citizen complaints, much less provide evidence as to the merits of any complaints. Doc. 69-4 at 37:1–39:23.

Finally, Potter's reliance on his mother's purported knowledge of incidents within the police force does not establish knowledge on the part of any policymaker for Dothan. *Church v. City of Huntsville*, 30 F.3d 1332, 1345 (11th Cir. 1994) (holding no policy or custom where there was no evidence that a final policymaker was ever aware of the various incidents described by the witnesses at the hearing).

The court concludes that Potter has failed to present sufficient evidence to establish that the municipality had a custom or policy that constituted deliberate indifference to Potter's constitutional rights. The evidence on which Potter relies has not been shown to reflect meritorious complaints, *Brooks*, 813 F.2d at 1193, or factually similar conduct. *Mercado*, 407 F.3d at 1162. The court also concludes that the evidence has not demonstrated that a policy or custom of failing to train or supervise caused the violation. *See Stovall,* 2005 WL 2002069, at *8 (granting summary judgment in part because the plaintiff presented no evidence that any policy or custom by the City of Dothan caused his injury).

In addition to his theories for municipal liability based on the use of force and training and supervision of officers generally, Potter also points to General Order 200-10H and claims that Traynham and Mock did not receive adequate training in the policy because the conduct that violated Potter's constitutional rights was a clear violation of the General Order. Doc. 69 at 19. If the theory of liability is a lack of training of the officers, "the focus must be on the adequacy of the training programs in relation to the tasks the particular officers must perform, and not merely on the training deficiencies for a particular officer." *Johnson v. Dixon*, 666 F. App'x 828, 831 (11th Cir. 2016).

In addition, to establish lack of adequate training based on the single constitutional violation at issue in the present case, rather than a widespread pattern, "the likelihood for constitutional violation [must be] so high that the need for training would be obvious." *Lewis v. City of W. Palm Beach, Fla*., 561 F.3d 1288, 1293 (11th Cir. 2009). This court cannot conclude that the facts of this case fit that standard because there is undisputed

evidence that the City of Dothan provided training on the use of excessive force, and the force used in this case is similar to the use of force in other decisions which have been held not to "rise to the level of obviousness reserved for 'a narrow range of circumstances [where] a violation of federal rights may be a highly predictable consequence' of a failure to provide adequate training." *See id.* (holding that "hobbles do not have the same potential flagrant risk of constitutional violations as the use of deadly firearms" so that failure to provide training on hobbles is not a particular glaring omission in a training regimen). Therefore, the court cannot conclude that Potter has created a question of fact as to the adequacy of the City's excessive force training program under the facts of this case so as to establish municipal liability. Summary judgment is due to be GRANTED as to the City of Dothan on the federal constitutional claims.

**B.      State-Law Claims**

*1.      Individuals*

In Count Nine of the Second Amended Complaint, Potter brings a claim against Traynham labeled as assault and battery/intentional infliction of emotional distress. Doc. 23 at 11. In their briefing, the defendants treat this as a claim for assault and battery against Traynham (Doc. 60 at 29), as does Potter in his briefing. Doc. 68 at 24. Therefore, the court construes Count Nine as stating only a claim for assault and battery and bringing that claim solely against Traynham.

A plaintiff bringing an assault and battery claim under Alabama law must demonstrate "(1) that the defendant touched the plaintiff; (2) that the defendant intended to touch the plaintiff; and (3) that the touching was conducted in a harmful or offensive

manner." *Harper v. Winston Cnty.*, 892 So. 2d 346, 353 (Ala. 2004).

The defendants argue that Potter is collaterally estopped from pursuing his assault and battery claim because a police officer may only be held liable under Alabama law if more force is used than is necessary to effectuate the arrest and the use of force in this case was not excessive. However, as discussed above, the court has concluded that an issue of fact precludes summary judgment on Potter's claims for excessive force. Potter has presented evidence that demonstrates that Traynham touched Potter, intended to touch Potter, and that the touching was harmful or offensive. *See id.* Accordingly, the collateral estoppel argument fails.

The defendants also argue that Alabama state-law immunity requires that summary judgment be entered on Potter's assault and battery claim because there is no evidence that his conduct was so egregious as to amount to willful or malicious conduct. Section 6-5-338 of the Alabama Code "shields every defendant who (1) is a 'peace officer,' (2) is performing 'law enforcement duties,' and (3) is exercising judgment or discretion." *Ex Parte Dixon*, 55 So. 3d 1171, 1177 (Ala. 2010).

Traynham, who was employed by the City of Dothan as a police officer and is sued for his role in effecting Potter's arrest, falls within the category of persons protected by this statute. Accordingly, the court concludes that defendants have made a *prima facie* showing that immunity applies. However, the Alabama Supreme Court has established a burden-shifting rule for application of the state-law immunity test. After the defendant demonstrates that he was acting in a function that would entitle him to immunity, "the burden then shifts to the plaintiff to show that the State agent acted willfully, maliciously,

fraudulently, in bad faith, or beyond his or her authority." *See Brown v. City of Huntsville*, 608 F. 3d 724, 741 (11th Cir. 2010) (citing *Ex parte Estate of Reynolds*, 946 So. 2d 450, 452 (Ala. 2006)).

Construing the facts in the light most favorable to Potter, Traynham kneed him in the eye after he had laid on the floor, had his arms pulled behind him by officers, and was not resisting arrest. Accordingly, the court concludes that the questions of fact which preclude summary judgment on his federal excessive force claim also preclude summary judgment on his assault and battery claim. The defendants' Motion for Summary Judgment is due to be DENIED on this claim.

### 2. *City of Dothan*

The defendants move for summary judgment on Potter's state-law claim against the City of Dothan, arguing only that, even though a municipality may be held liable on a theory of *respondeat superior*, the City of Dothan is immune from the state-law claim pursuant to Alabama Code § 6-5-338(b) because Traynham is immune. For the reasons discussed, the court has concluded that Traynham is not immune, therefore, summary judgment is due to be DENIED as to the City of Dothan on the state-law claim.

The motion for summary judgment is, however, due to be granted in favor of the City of Dothan on any claim for punitive damages. *See* Ala. Code § 6-11-26; *see also Dial v. City of Bessemer*, 2016 WL 3054728, at *8 (N.D. Ala. May 31, 2016) (stating the Alabama Code expressly prohibits the recovery of punitive damages from a municipality except in circumstances inapplicable here).

## V. CONCLUSION

For the foregoing reasons, it is ORDERED as follows:

1.     The Motion for Summary Judgment filed by Defendants City of Dothan and Steve Parrish (Doc. 57) is GRANTED as to Steve Parrish in his official and individual capacity as to all claims, and as to the City of Dothan on Plaintiff's federal-law claims and state-law claim for punitive damages.  Judgment is entered in favor of Steve Parrish and the City of Dothan against Plaintiff David Potter on those claims.  The Motion (Doc. 57) is DENIED in all other respects.

2.     The Motion for Summary Judgment filed by Defendants Timothy Traynham and Ray Mock (Doc. 59) is DENIED.

DONE this 6th day of September, 2018.

GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE